UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| Daryl K. Valentine,<br>  *Petitioner*,<br><br>  *v.*<br><br>Commissioner of Correction,<br>  *Respondent*. | Civil No. 3:06cv1159 (JBA)<br>PRISONER<br><br><br>December 17, 2008 |

**RULING ON PETITION FOR WRIT OF HABEAS CORPUS**

Petitioner Daryl K. Valentine, currently confined at the MacDougall-Walker Correctional Institution in Suffield, Connecticut, brings this action for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. He challenges his conviction for murder, assault and possession of a firearm without a permit on the grounds that he was not afforded an effective opportunity to cross-examine a witness. For the reasons set forth below, the petition is denied.

**I. Procedural Background**

Valentine was arrested and charged with two counts of murder, one count of assault in the first degree and one count of possession of a pistol without a permit as a result of the shooting deaths of Andrew Paisley and Hury Poole and wounding of Christopher Roach at the Athenian Diner in New Haven, Connecticut, on September 21, 1991. Valentine was convicted after a jury trial. The conviction was reversed on appeal and the case was remanded for a new trial. *See State v. Valentine*, 240 Conn. 395, 692 A.2d 727 (1997).

At the second trial, the jury again found Valentine guilty of all counts. On February

6, 1998, the court sentenced Valentine to a total effective term of imprisonment of 100 years. The Connecticut Supreme Court affirmed the conviction. *See State v. Valentine*, 255 Conn. 61, 762 A.2d 1278 (2000) ("*Valentine II*"). Valentine filed a petition for writ of habeas corpus in state court on issues not relevant to this action. By petition dated June 26, 2006, Valentine commenced this action.

II.     **Factual Background**

The Connecticut Supreme Court determined that the jury reasonably could have found the following facts: In the early morning hours of September 21, 1991, Andrew Paisley, Hury Poole, and Christopher Roach approached the Athenian Diner, in New Haven. They observed people fighting on the steps of the diner. One of the state's witnesses heard an individual tell another person to shoot. Valentine came around the side of the diner and fired several gunshots, hitting and fatally wounding both Paisley and Poole. Valentine ran to a parked car and got into the front passenger seat. Roach ran after Valentine and approached the driver's side of the car. Valentine shot Roach twice in the forearm through the open window before the car sped away. *Valentine II*, 255 Conn. at 64, 762 A.2d at 1281–82.

III.    **Standard**

The federal court will entertain a petition for writ of habeas corpus challenging a state court conviction only if the petitioner claims that his custody violates the Constitution or federal laws. 28 U.S.C. § 2254(a). A claim that a state conviction was obtained in

violation of state law is not cognizable in federal court. *See Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) ("We have stated many times that federal habeas corpus relief does not lie for errors of state law.'") (citations omitted).f

A federal court cannot grant a petition for a writ of habeas corpus filed by a person in state custody with regard to any claim that was rejected on the merits by the state court unless the adjudication of the claim in state court either:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The federal law defined by the Supreme Court "may be either a generalized standard enunciated in the Court's case law or a bright-line rule designed to effectuate such a standard in a particular context." *Kennaugh v. Miller*, 289 F.3d 36, 42 (2d Cir. 2002). Clearly established federal law is found in holdings, not dicta, of the Supreme Court "as of the time of the relevant state-court decision." *Id.* (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000) (O'Connor, J., delivering portion of opinion of the Court)).

A decision is "contrary to" clearly established federal law "if the state court applies a rule different from" that set forth by the Supreme Court, "or if it decides a case differently than the Supreme Court on a set of materially indistinguishable facts." *Bell v. Cone*, 535 U.S. 685, 694 (2002). A state court unreasonably applies Supreme Court law when the court "correctly identifies the governing legal principle from [U.S. Supreme Court] decisions, but unreasonably applies it to the facts of the case." The state court decision must be more than incorrect—it also must be objectively unreasonable. *Id.; see also Rompilla v. Beard*, 545 U.S.

3

374, 380 (2005).

When reviewing a habeas petition, the federal court presumes that the factual determinations of the state court are correct. The petitioner has the burden of rebutting that presumption "by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). Because collateral review of a conviction requires application of a "different standard[]" than on direct appeal, "an error that may justify reversal on direct appeal will not necessarily support a collateral attack on a final judgment." *Brecht v. Abrahamson*, 507 U.S. 619, 634 (1993) (quotations and citations omitted).

IV.     **Discussion**

Valentine includes one ground for relief: he argues that his conviction was obtained in violation of the Due Process Clause of the Fourteenth Amendment. He attaches to his petition a copy of his state appellate brief. The issue on appeal was characterized as violation of his constitutional right to confrontation and his common-law right to cross examination. Because Valentine attaches the state brief and states that he exhausted his state court remedies on this claim, the court construes this petition as raising the same issue Valentine presented on direct appeal.

Criminal defendants have a constitutional right to confront and cross-examine the witnesses against them, and such cross-examination should not be unduly restricted. *Delaware v. Van Arsdall*, 475 U.S. 673, 678–79 (1986) (citing *Davis v. Alaska*, 415 U.S. 308, 315–16 (1974)). Cross-examination permits the defendant to elicit facts showing "possible biases, prejudices, or ulterior motives of the witness." *Davis*, 415 U.S. at 316. Its purpose is to allow the defendant to elicit this information so that the jury may evaluate the "credibility" and "believability" of the witness. *Id.* at 318.

4

The right to confrontation and cross-examination is not absolute. *Cf. Rock v. Arkansas*, 483 U.S. 44, 55 (1987) ("Of course, the right to present relevant testimony is not without limitation."). "'[T]he Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.'" *Van Arsdall*, 475 U.S. at 679 (quoting *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985) (per curiam)) (emphasis in *Fensterer*). Trial courts retain broad discretion "to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Id.*

The Connecticut Supreme Court identified and applied this law in its decision affirming the trial court's limitation on Valentine's cross-examination of a witness. *See Valentine II*, 255 Conn. at 70–74, 762 A.2d at 85–87. Therefore, the decision is not contrary to Supreme Court precedent. This Court next considers below whether the Connecticut Supreme Court reasonably applied this law to the facts.

The Connecticut Supreme Court determined that the jury reasonably could have found the following facts relevant to Valentine's argument that he was denied his constitutional right to confrontation and cross examination: Tara Brock, Regina Coleman, and Kristina Higgins witnessed the shooting from a parked car in the Athenian Diner parking lot. Detective Joseph Greene obtained a tip that Coleman may have been present at the shooting and spoke to her at her home the same day. Coleman stated that she was not present and did not know what had happened. Five days later, on September 26, 1991, Higgins gave the police a tape-recorded statement in which she identified the Valentine as the shooter, and on October 1, 1991 she signed a typewritten version of her recorded

5

statement. Higgins also identified Valentine in a photographic array. On September 28, 1991, Detective Greene brought Coleman to the police station for questioning. Coleman also gave the police a tape-recorded statement identifying Valentine as the shooter and positively identified Valentine in a photographic array. On October 10, 1991, Coleman refused to sign a typewritten version of the recorded statement that she had given to the police. *Valentine II*, 255 Conn. at 65, 762 A.2d at 1282.

During Valentine's first trial, Higgins and Coleman both recanted their statements. Higgins testified that the three women were not present at the shooting. She said that she lied in the tape-recorded statement, and that Detective Greene had threatened her with jail time in order to elicit her statement. Higgins also testified that after she provided the recorded statement, Detective Greene bought her alcohol and cigarettes and gave her money to buy cocaine. The trial court admitted her signed statement for substantive purposes under state law permitting introduction of prior written inconsistent statements. Coleman also testified at the first trial that she told Detective Greene that she was not present at the diner during the shooting and that she had fabricated her statement under pressure and bribes from Detective Greene. *See id.* at 65–66, 762 A.2d at 1282.

At the second trial, Higgins again testified that she fabricated her tape-recorded statement under coercion by Detective Greene. The sworn statement was again admitted for substantive purposes and her prior trial testimony was admitted for impeachment purposes. Coleman testified that she did not remember the shooting or giving a recorded statement, but she acknowledged that she had identified Valentine in a photographic array. Coleman also stated that she did not recall testifying at the first trial. The state introduced Coleman's tape-recorded statement as a prior inconsistent statement for impeachment

purposes. Coleman testified that she did not remember saying that the tape-recorded statement was not true, or if Detective Greene had told her what to say in the statement or otherwise coerced her. Coleman stated that Detective Greene did not offer her any money for her statement. The trial court admitted Coleman's prior testimony for substantive purposes. *See id.* at 66, 762 A.2d at 1282–83.

At the second trial, Valentine wanted to introduce, for impeachment purposes, evidence concerning a civil judgment against Detective Greene in an unrelated case, *Ham v. Greene*, 248 Conn. 508, 729 A.2d 740, *cert. denied*, 528 U.S. 929 (1999). One of the allegations in the fifteen-count complaint in that case was that Detective Greene had coerced a witness to make an inculpatory statement against the plaintiff and then included the statement in a warrant affidavit. The plaintiff prevailed in the case. At Valentine's second trial the state filed a motion *in limine* to preclude Valentine from questioning Detective Greene about *Ham*. Valentine characterized that civil case as turning on the allegation that Detective Greene coerced a witness to make a false statement and argued that the judgment bore directly on detective Greene's veracity and, therefore, on the reliability of the tape-recorded statements made by Coleman and Higgins. Valentine argued that the civil case established a pattern of conduct in using coercion to elicit statements from reluctant witnesses and proposed six questions to ask Detective Greene. The trial court excluded all evidence regarding the judgment in *Ham*. The trial court found that the civil judgment was irrelevant, most of the proposed questions did not relate to Detective Greene's veracity, the civil judgment might confuse the jury, extensive jury instructions would be required, it was not clear whether the jury in the civil case had relied on the alleged coercion in reaching its verdict and, given Coleman's testimony in Valentine's trial, the issues Valentine wanted to

7

raise were collateral. *See Valentine II*, 255 Conn. at 66–68, 762 A.2d at 1283–84.

This Court must decide whether the Connecticut Supreme Court's application of federal law was objectively unreasonable. This determination depends on the nature of the particular rule. If the rule is specific, the parameters of reasonable application are narrow. If, however, the rule is more general in scope, there may be a substantial amount of discretion in applying the rule to the facts of a particular case. *See Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004). The Confrontation Clause has general scope. Trial courts are afforded wide latitude in limiting cross-examination in light of the concerns identified above.

At his second trial, Valentine was able to present evidence of the recantations of Coleman and Higgins and their statements that Detective Greene had coerced them into making the tape-recorded identifications. He also presented evidence that the third woman, Tara Block, never stated that she was present at the diner at the time of the shooting and that Detective Greene never took a formal statement from her. Valentine also cross-examined Detective Greene extensively regarding his interview with Coleman, including questions that were asked and omitted, and the statements provided by Higgins and Coleman. Detective Greene admitted that the first time he questioned Coleman, she denied being at the diner.

The trial court denied Valentine's request to introduce evidence of the civil judgment for several reasons. The evidence did not clearly relate to Detective Greene's veracity, the evidence would be confusing to the jury and, in light of the evidence from Coleman and Higgins, was collateral. The Connecticut Supreme Court concluded that this decision was not an abuse of discretion and did not violate Valentine's rights under the Confrontation Clause because it did not result in the exclusion of evidence that directly related to Detective

8

Greene's motive, bias or interest.

The state courts noted that the fifteen-count civil complaint asserted federal law claims of false arrest and malicious prosecution and common law claims of false arrest, malicious prosecution, intentional infliction of emotional distress and negligence against detective Greene and one other police officer. The plaintiff alleged, *inter alia*, that defendant Greene had prepared an arrest warrant affidavit which included information from two witnesses' statements that incriminated the plaintiff. The affidavit failed to include information regarding inconsistencies between various statements given by the witnesses. The charges against the plaintiff were dismissed at trial when the witnesses recanted their statements implicating the plaintiff and one witness claimed that Detective Greene had coerced him into making the incriminating statements. *See Ham*, 248 Conn. at 515–16 & n.4, 729 A.2d at 746–47 & n.4.

The Connecticut Supreme Court noted that the alleged coercion was one of many allegations of misconduct in the complaint and concluded that there was no way to determine whether the jury credited the testimony regarding coercion in reaching its verdict for the plaintiff. Thus, without the introduction of extensive facts and an analysis of the jury instructions from the civil case, the jury in Valentine's criminal case would not be able to determine whether Detective Greene was found liable for coercing a reluctant witness. *Valentine II*, 255 Conn. at 72–74, 762 A.2d at 1286–87.

The Connecticut Supreme Court concluded that the trial court was within its discretion when it disallowed the evidence from the civil case because of the great potential for confusion and the need for extensive instruction. Also, without a clear indication that the jury found that Detective Greene had coerced the witness in the prior case, there was no

9

connection between the civil case and Valentine's second criminal case. Finally, the Connecticut Supreme Court determined that because Valentine was able to present evidence through Coleman and Higgins that detective Greene had coerced their taped statements, the evidence from the civil case was collateral. *Id.*

If the jury has sufficient facts to make a discriminating evaluation of a witness' credibility, a defendant's right to cross-examination under the Confrontation Clause has not been improperly curtailed. *See United States v. Laljie*, 184 F.3d 180, 192–93 (2d Cir. 1999) (citing multiple cases). Valentine was afforded a full and fair opportunity to introduce evidence challenging Detective Greene's testimony and to question Detective Greene's motives on cross-examination. See *Fensterer*, 474 U.S. at 22 (Confrontation Clause required only a full and fair opportunity to expose motives of witness and focus attention of factfinder on questionable credibility). Thus, Valentine was able to present evidence calling Detective Greene's credibility into question.

This Court has reviewed the documents from *Ham*, the transcripts of Valentine's second trial, Valentine's appellate brief and the decision of the Connecticut Supreme Court. Valentine was afforded the opportunity to challenge the taped statements of Coleman and Higgins and to question Detective Greene's veracity. The Court concludes that the Connecticut Supreme Court's analysis of the claim and determination that the trial court did not violate the Confrontation Clause is not an unreasonable application of established federal law. Accordingly, the petition for writ of habeas corpus is denied.

## V. Conclusion

Valentine has not shown that the state court's findings were contrary to or an unreasonable application of Supreme Court law. Thus, the Petition for a Writ of Habeas Corpus [Doc. # 1] is DENIED. Because Valentine has not made a showing of the denial of a constitutional right, a certificate of appealability will not issue. The Clerk is directed to enter judgment and close this case.

IT IS SO ORDERED.

/s/

Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 17th day of December, 2008.